1
2
3
4
5
6
7
8                         UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,                No.  2:21-cv-01964-WBS-CKD

12                 Plaintiff,                 ORDER & FINDINGS AND
                                              RECOMMENDATIONS
13          v.
                                              (ECF Nos. 13, 18)
14   EDWARD T. KENNEDY,

15                 Defendant.

16

17          Before the court is a motion by the United States ("plaintiff" or "the government") for

18   default judgment against defendant Edward T. Kennedy, who is representing himself in this

19   action.[1]  (ECF No. 13.)  Although defendant has appeared in this action, he failed to file an

20   opposition to the motion despite an extension of time, and the motion was submitted without oral

21   argument pursuant to Local Rule 230(g).  (ECF No. 15.)  For the following reasons, the court

22   recommends that plaintiff's motion for default judgment be GRANTED.

23   ////

24   ////

---

[1]     Because defendant is self-represented, the case is referred to the undersigned pursuant to
28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(21).  (See ECF No. 7.)

        Also pending is the government's request for a status conference or hearing on the motion
for default judgment.  (ECF No. 18.)  Because the undersigned recommends granting the motion
for default judgment, no hearing is necessary, and that request is denied as moot.

1

1  I.    **BACKGROUND**

2          Plaintiff initiated this action in October 2021, seeking to nullify a UCC Financing

3  Statement (a purported lien) filed with the California Secretary of State by defendant against the

4  Commissioner of the Internal Revenue Service ("IRS") and to enjoin defendant's future filing of

5  similar documents against United States employees.  (ECF No. 1.)  On December 9, 2021,

6  defendant was personally served with a copy of the complaint and summons.  (ECF No. 5.)  In

7  December 2021, defendant filed two notices objecting to suit in general and purporting to show

8  his superior claims to all property of the United States.  (ECF Nos. 6, 8.)  Defendant did not

9  substantively respond to the complaint, and on March 7, 2022, at plaintiff's request, the Clerk of

10  Court entered his default.  (ECF Nos. 10-12.)  On March 29, 2022, plaintiff filed the instant

11  motion for default judgment.  (ECF No. 13.)  Defendant did not respond to the motion, so the

12  court vacated the hearing and gave defendant an additional opportunity to oppose.  (ECF No. 15.)

13  On May 9, 2022, defendant responded by filing a copy of the order vacating the hearing, on top of

14  which was handwritten "Refused.  Returned to sender."  (ECF No. 17.)  On August 31, 2022,

15  plaintiff filed a request for status conference or hearing, requesting a ruling on the present motion

16  and notifying the court that since the motion's filing defendant on July 6, 2022, filed another

17  UCC Financing Statement against the IRS Commissioner.[2]  (ECF Nos. 18, 18.1.)

18  ////

19

---

20  [2]      On June 23, 2022, defendant also filed a UCC Financing Statement with the California
21  Secretary of State naming as purported debtors the Clerk of this Court, the undersigned, the
   District Judge assigned to this case, and the United States Attorney General.  Like the financing
22  statements filed against the IRS Commissioner, defendant lists the residential addresses of each
   purported debtor; and plaintiff mailed a copy of the UCC Financing Statement to the home
23  addresses of at least the undersigned and the Clerk of Court.  These mailings were reported to the
   United States Marshal.
24          Upon careful consideration, the undersigned concludes that recusal is not warranted based
   on the receipt of these sham financing statements against the court.  Defendant files similar sham
25  liens against every federal officer or employee connected with the IRS collection efforts against
   him, and the court will not allow defendant to obstruct the resolution of this case by filing sham
26  documents against each judicial officer assigned to the case.  See United States v. Sierra Pac.
   Indus., 759 F. Supp. 2d 1198, 1200-01 (E.D. Cal. 2010) (judges "must not simply recuse out of an
27  abundance of caution when the facts do not warrant recusal.  Rather, there is an equally
   compelling obligation not to recuse where recusal in not appropriate.").

28

Plaintiff alleges that on September 1, 2021, defendant filed with the California Secretary of State a UCC Financing Statement naming as a purported "Debtor" Charles Rettig, who has been the IRS Commissioner since November 2018.  (Compl. ¶¶ 6, 8; ECF No. 1.1 at 1-2, UCC Financing Statement, Filing No. U210080802220.)  Defendant listed Commissioner Rettig's residential address on the Financing Statement and also mailed a copy of the Financing Statement to Rettig's residence.  (Compl. ¶¶ 10-12.)  Commissioner Rettig is not personally acquainted with defendant and has not had any contact or relationship with him; he does not owe money to defendant; and he has not entered any contract, security agreement, or personal transaction with defendant.  (Id. ¶¶ 12-13.)

Over the years, the IRS has issued statutory notices to defendant concerning his outstanding tax liabilities for 2001, 2007, 2009, 2010, 2013, 2014, 2015, and 2016.  (Id. ¶ 17.)  On March 17, 2021, before filing the subject UCC Financing Statement, defendant wrote to Commissioner Rettig and other government officials, advancing frivolous arguments against IRS collection efforts.  (Id.; see ECF No. 1.1 at 5-13.)  On March 28, 2021, defendant also wrote to the United States Tax Court, making frivolous allegations that he is not a United States citizen and providing "notice" to court officers and employees of liability for acts against him.  (Id. ¶ 18; see ECF No. 1.1 at 16-17.)  Commissioner Rettig is aware that defendant is engaged in a dispute with the IRS, but he has had "no involvement in any capacity in that dispute."  (Id. ¶ 15.)

IRS Revenue Office Bruce Kreutzer is assigned to collect defendant's outstanding tax liabilities.  (Id. ¶ 19.)  In connection with collection efforts, on May 3, 2021, Officer Kreutzer filed a Notice of Federal Tax Lien against defendant in Pennsylvania, where defendant resides.  (Id.)  On May 26, 2021 and then again on August 18, 2021, defendant sent letters to Officer Kreutzer's residential address, threatening that "Commercial Liens [were] Forthcoming" against him for purported debts of tens of millions of dollars for alleged violations related to the Federal Tax Lien. (Id. ¶¶ 20-21; see ECF No. 1.1 at 23-30.)  Like Commissioner Rettig, Officer Kreutzer is not personally acquainted with defendant, does not owe him money, and has not engaged in any personal transaction with him; Officer Kreutzer has had no contact or relationship with defendant outside of his duties as an IRS Revenue Officer.  (Id. ¶¶ 22-23.)

3

1   Plaintiff claims that defendant filed the UCC Financing Statement and sent it to Rettig's

2   personal residence in retaliation for the IRS's official collection actions against defendant, with

3   the intent to interfere with the enforcement of internal revenue laws.  (Id. ¶¶ 25-26.)  Plaintiff

4   similarly claims that defendant's threats to file other purported liens are also intended to interfere

5   with enforcement of internal revenue laws and to intimidate and harass federal employees in their

6   personal lives.  (Id. ¶ 29.)

7   The complaint requests (A) a declaration that the subject UCC Financing Statement is null

8   and void and thus be expunged, (B) leave to file any order or judgment obtained in this case with

9   the relevant public records offices where the UCC Financing Statement and similar documents

10   may have been filed by defendant, and (C) a permanent injunction prohibiting defendant and his

11   agents "from filing, or attempting to file, any document or instrument, which (1) purports to

12   create a nonconsensual lien against the property of any federal officer or employee, or which

13   (2) contains any personal information (such as the social security number or the residence

14   address) of any federal officer or employee[.]"  (Compl. at 5.)

15   The government seeks these same terms of judgment in the present motion for default

16   judgment.  (ECF No. 13.1 at 11-12.)

17   **II.    LEGAL STANDARD**

18   Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

19   against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

20   against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

21   automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

22   238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

23   (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

24   within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

25   1980).  In making this determination, the court considers the following factors:

26   (1) the possibility of prejudice to the plaintiff, (2) the merits of
      plaintiff's substantive claim, (3) the sufficiency of the complaint,

27

28   ////

4

> (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").

## III.   DISCUSSION

### A.   Jurisdiction & Venue

The court has subject matter jurisdiction over this action pursuant to both 28 U.S.C. § 1345, as this is a civil action filed by the United States, and 28 U.S.C. § 7402(a), as this action seeks to aid in the enforcement of internal revenue laws.  See United States v. Morris, No. 2:10-CV-00614-FCD-KJM, 2010 WL 5136180, at *2 (E.D. Cal. Dec. 10, 2010).

The government's motion fails to address the other jurisdictional question of personal jurisdiction, which is called into question by virtue of defendant's residence in Pennsylvania.  (Compl. ¶ 5.)  However, the undersigned finds that the court possesses specific personal jurisdiction over defendant because he purposefully availed himself of the lien recording mechanisms in the State of California.  "Where, as here, no federal statute authorizes personal

1    jurisdiction, the district court applies the law of the state in which the court sits."  CollegeSource,

2    Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011).  "California's long-arm statute,

3    Cal. Civ. Proc. Code § 410.10, "is coextensive with federal due process requirements, so the

4    jurisdictional analyses under state law and federal due process are the same."  Id. (cleaned up).  A

5    district court has specific personal jurisdiction when:  (1) the nonresident defendant "purposefully

6    avails" himself of the privilege of conducting activities in the forum state or "purposefully

7    direct[s]" his activities to the forum state; (2) the claim "arises out of or relates to the defendant's

8    forum-related activities"; and (3) exercising jurisdiction is consistent with "fair play and

9    substantial justice."  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir.

10   2004).

11          The undersigned finds that specific jurisdiction exists over defendant.  First, defendant

12   purposefully availed himself of the privilege of conducting activities in California by filing a

13   UCC Financing Statement with the California Secretary of State regarding the property of IRS

14   Commissioner Rettig, listing a California mailing address for the Commissioner (along with a

15   Washington, D.C. residential address).  (Compl. ¶ 10; ECF No. 1.1 at 1.)  Second, the

16   government's complaint, which seeks in part to nullify this UCC Financing Statement and to

17   enjoin defendant from filing similar baseless liens, arises out of and relates to his forum-related

18   activities.  Finally, the exercise of specific jurisdiction in this action is reasonable, as defendant

19   chose to file the UCC Financing Statement with the State of California.  Thus, the elements of

20   specific personal jurisdiction are met.[3]  See United States v. Hollingshead, No. 2:06-CV-00421-

21   GEB-DAD, 2006 WL 1791680, at *3 (E.D. Cal. June 27, 2006) (finding specific personal

22

23   [3]      This is by no means a simple open-shut issue, however, and the government is cautioned
      not to overlook the question of personal jurisdiction in future similar actions—especially those in
24   which the subjects of the false liens or threatened false liens are not alleged to reside in the forum
      state.  United States v. Morris, No. 2:10-CV-00614-FCD-KJM, 2010 WL 5136180, at *3 (E.D.
25   Cal. Dec. 10, 2010) (finding specific personal jurisdiction over defendant who filed false UCC
      Financing Statement "against a federal employee with a California address, causing harm likely
26   to be suffered in California"), report and recommendation adopted, 2011 WL 43579 (E.D. Cal.
      Jan. 6, 2011).  Commissioner Rettig is alleged to reside in Washington, D.C., and although
27   Revenue Officer Kreutzer's residence is not alleged, his declaration states that his duty post is in
      Pittsburgh, Pennsylvania.  (Compl. ¶¶ 10-11; ECF No. 13.3 ¶ 1.)

28

jurisdiction over Arizona resident who filed baseless UCC Financing Statement against IRS Commissioner), report and recommendation adopted, 2006 WL 2355505 (E.D. Cal. Aug. 14, 2006).

The other component of personal jurisdiction, valid service of process, is also met here. As reflected in the docketed proof of service and in a declaration in support of this motion, a professional process server personally served defendant at his residence on December 9, 2021. (ECF No. 5; ECF No. 10.1 ¶ 2.)  A few days later, defendant mailed the process server an "invoice" related to the case, confirming that defendant received actual notice of this suit.  (ECF Nos. 10.1 ¶ 3 & 10.2 at 3, listing the instant case number in the heading.)  Further confirmation of defendant's awareness of this suit is found in his repeated filings of notices objecting to suit in general.  (ECF Nos. 6, 8.)  Accordingly, service of process was properly effectuated, and the court should therefore exercise personal jurisdiction over defendant.

Likewise, venue is proper in this district because the California Secretary of State's office lies within the Eastern District of California, and defendant filed the subject UCC Financing Statement with that office, giving rise to this suit.  See 28 U.S.C. § 1391(b)(2) (venue proper in "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

**B.  Appropriateness of the Entry of Default Judgment Under the _Eitel_ Factors**

The undersigned finds that the weight of the Eitel factors entitles plaintiff to default judgment on all claims asserted.

1.  Plaintiff is prejudiced by defendant's non-responsiveness.

The first Eitel factor considers whether plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to plaintiff militates in favor of granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Absent entry of default judgment, defendant's false UCC Financing Statement will continue hanging over the IRS Commissioner, causing substantial and immediate injury such as potential damage to his credit ratings, clouding of title to property he owns, and distracting from his ability to perform his official duties. Likewise, absent entry of default judgment, defendant's threats to file similar false liens against

7

1    Revenue Officer Kreutzer will continue to cause him distress and anxiety about the possible

2    negative impact on his credit record and ability to obtain credit.  (See ECF No. 13.3 ¶ 5.)  Finally,

3    without default judgment, the government would be without sufficient recourse, at least through a

4    civil proceeding, to stop defendant from continuing to file and threaten to file false liens in

5    hindrance of the IRS's collection efforts.  Accordingly, the first Eitel factor favors the entry of a

6    default judgment.

7            2.   Plaintiff's substantive claims are meritorious and sufficiently pleaded in the FAC.

8            The court considers the second and third factors—the merits of plaintiff's substantive

9    claims and the sufficiency of the complaint—together due to the relatedness of the two inquiries.

10   The court must consider whether the allegations in the complaint are sufficient to state a claim for

11   relief.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Here, the

12   complaint asserts a single cause of action to nullify and enjoin defendant's filing of past and

13   future false liens on the property of any federal officer or employee.  (Compl. at 4-5.)  Although

14   the complaint does not clearly state the statutory basis for the claim, the government argues in

15   support of this motion that 26 U.S.C. § 7402 authorizes nullifying the false lien and enjoining

16   future liens.  (Compl. ¶ 2, asserting jurisdiction under § 7402; see ECF No. 13.1 at 6-8.)

17           Under 26 U.S.C. § 7402(a), "[t]he district courts of the United States at the instance of the

18   United States shall have such jurisdiction to make and issue in civil actions, writs and orders of

19   injunction . . . , and such other orders and processes, and to render such judgments and decrees as

20   may be necessary or appropriate for the enforcement of the internal revenue laws."  The Ninth

21   Circuit has expressly held that "section 7402(a) empowers the district court to void common-law

22   liens imposed by taxpayers on the property of government officials assigned to collect delinquent

23   taxes."  Ryan v. Bilby, 764 F.2d 1325, 1327 (9th Cir. 1985); accord Cook v. Peter Kiewit Sons

24   Co., 775 F.2d 1030, 1035 (9th Cir. 1985).

25           "Courts in this circuit have routinely granted declaratory relief to expunge sham items

26   filed against government officials."  United States v. Halajian, No. 1:13-cv-0468-AWI-SKO,

27   2013 WL 5954806, at *4 (E.D. Cal. Nov. 6, 2013).  See, e.g., United States v. Agra, No. 2:13-

28   CV-1662-GEB-DAD, 2014 WL 1671592, at *4-5 (E.D. Cal. Apr. 28, 2014) (recommending

8

1    nullification of sham UCC Financing Statements); United States v. Kadosh, No. CV-13-1133-

2    EFS, 2014 WL 840777, at *2 (E.D. Cal. Mar. 4, 2014) ("[T]he Court declares the false UCC–1 as

3    null, void, and of no legal effect and directs that it should be expunged."); United States v.

4    Weldom, No. 1:13-cv-1138-LJO-SAB, 2013 WL 5877306, at *4 (E.D. Cal. Oct.30, 2013)

5    (recommending that Financing Statement be declared null, void and of no legal effect); United

6    States v. Brekke, No. CIV 2:12-cv-0722-WBS-JFM, 2012 WL 2450718, at *5 (E.D. Cal. June 26,

7    2012) (same); United States v. Merritt, No. 2:11-cv-1136-JAM-KJN, 2011 WL 5026074, at *8

8    (E.D. Cal. Oct. 21, 2011) (same); United States v. Edwards, 2008 WL 1925243, at *3–5 (voiding

9    sham UCC Financing Statements filed by taxpayer, and permanently enjoining taxpayer from

10   filing any document or instrument purporting to create non-consensual liens or encumbrances

11   against employees of the United States).  Therefore, § 7402 authorizes this court to declare the

12   instant financing statement null and void, and the court should do so.

13           Under applicable California law, a lien is created by a contract between the parties or by

14   operation of law.  Cal. Civ. Code § 2881.  "A UCC Financing Statement may be filed, for

15   example, to perfect a security interest created by a security agreement."  Merritt, 2011 WL

16   5026074, at *4.  "In the absence of a valid security agreement," however, "a financing statement

17   does not create an enforceable security interest."  In re Wes Dor, Inc., 996 F.2d 237, 239 n.2 (10th

18   Cir. 1993).

19           Here, the well-pleaded allegations of the complaint and the declaration of Commissioner

20   Rettig demonstrate that defendant's purported lien against the Commissioner has no basis in law

21   or fact.  The Commissioner is not personally acquainted with defendant and has not had any

22   contact or relationship with him.  (Compl. ¶ 12; ECF No. 13.2, Rettig Decl., ¶ 3.)  Critically, the

23   Commissioner has not entered into "any contract, security agreements, or personal transaction

24   with [defendant] and does not owe money to [him]."  (Compl. ¶ 13; Rettig Decl. ¶ 3.)  Thus, the

25   UCC Financing Statement filed September 1, 2021 is not premised on any legitimate debt or law.

26   Rather, as alleged by plaintiff, defendant filed the UCC Financing Statement to harass

27   Commissioner Rettig in retaliation for the IRS's attempts to collect defendant's outstanding

28   federal tax liability.  (Compl. ¶¶ 15, 27.)  Accordingly, plaintiff has pled a sufficient basis for

9

1  relief under 26 U.S.C. § 7402(a).  Therefore, the second and third <u>Eitel</u> factors favor the entry of a

2  default judgment on this claim.

3          3.  <u>The amount of damages.</u>

4          The fourth <u>Eitel</u> factor for determining whether to enter default judgment is the sum of

5  money at stake.  Here, plaintiff is not seeking monetary damages against defendant, but rather

6  declaratory and injunctive relief.  Therefore this factor weighs in favor of granting default

7  judgment.

8          4.  <u>The material facts are not in dispute.</u>

9          Because the court may assume the truth of well-pleaded facts in the complaint (except as

10  to damages) following the clerk's entry of default, there is no likelihood that any genuine issue of

11  material fact exists.  <u>See, e.g.</u>, <u>Elektra Entm't Group Inc. v. Crawford</u>, 226 F.R.D. 388, 393 (C.D.

12  Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court

13  clerk enters default judgment, there is no likelihood that any genuine issue of material fact

14  exists."); <u>accord</u> <u>Philip Morris</u>, 219 F.R.D. at 500; <u>PepsiCo, Inc.</u>, 238 F. Supp. 2d at 1177.  As

15  such, the fifth <u>Eitel</u> factor favors a default judgment.

16          5.  <u>No excusable neglect.</u>

17          Here, there is no indication in the record that defendant's default was due to excusable

18  neglect.  <u>See Pepsi Co, Inc.</u>, 238 F. Supp. 2d at 1177.  Defendant was personally served with the

19  summons and complaint.  (<u>See</u> ECF Nos. 5, 10.1 ¶ 2.)  Defendant responded by filing two notices

20  objecting to suit and purporting to show his superior claims to all property of the United States.

21  (<u>See</u> ECF Nos. 6, 8 at 1, stating "I am the secured priority creditor.  The United States of

22  America . . . owe me everything nunc pro tunc.")  When defendant failed to file any timely

23  opposition to the instant motion, the court issued an order providing one additional opportunity to

24  respond, and that order was served on defendant both by the court and by plaintiff.  (Dkt. Entry

25  4/18/2022; ECF Nos. 15, 16.)  Defendant responded by filing a copy of that order on top of which

26  was handwritten "Refused.  Returned to sender."  (ECF No. 17.)  Therefore, defendant's failure to

27  respond with any substantive argument clearly is due to his intentional refusal—not due to

28  excusable neglect.  Accordingly, this <u>Eitel</u> factor favors the entry of a default judgment.

1         6. <u>Other factors outweigh the policy favoring disposition on the merits.</u>

2         "Cases should be decided upon their merits whenever reasonably possible." <u>Eitel</u>, 782

3   F.2d at 1472.  However, district courts conclude with regularity that this policy, standing alone, is

4   not dispositive, especially where a defendant fails to defend an action.  <u>PepsiCo, Inc.</u>, 238 F.

5   Supp. 2d at 1177; <u>see, e.g.</u>, <u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d 1039, 1061

6   (N.D. Cal. 2010).  Here, although the undersigned acknowledges the policy in favor of decisions

7   on the merits—and consistent with existing policy would prefer this case be resolved on the

8   merits—that policy does not, by itself, preclude the entry of default judgment.

9         In sum, after considering and weighing all the <u>Eitel</u> factors, the court concludes that

10   plaintiff is entitled to a default judgment against defendant, and recommends a default judgment

11   be entered.

12   **C.  <u>Terms of the Judgment to be Entered</u>**

13         After determining that a party is entitled to entry of default judgment, the court must

14   determine the terms of the judgment to be entered.  Plaintiff seeks both declaratory relief and

15   injunctive relief pursuant to 26 U.S.C. § 7402(a).

16         1. <u>Declaratory Relief</u>

17         In regards to the declaratory relief sought, plaintiff has plainly substantiated that it is

18   entitled to a declaration that the UCC Financing Statement, Filing Number U210080802220, filed

19   against Commissioner Rettig is null and void.  That purported lien has no basis in law or fact and

20   is thus without legal effect.  Accordingly, the undersigned recommends that such declaratory

21   relief be granted.

22         1. <u>Permanent Injunction</u>

23         In addition, the government seeks an order permanently enjoining defendant and his

24   agents "from filing, or attempting to file, any document or instrument, which (1) purports to

25   create a nonconsensual lien against the property of any federal officer or employee, or which

26   (2) contains any personal information (such as the social security number or the residence

27   address) of any federal officer or employee."  (ECF No. 13.1 at 12; <u>see</u> Compl. at 5.)

28   ////

Section 7402(a) authorizes the issuance of such injunctive relief "as may be necessary or appropriate for the enforcement of the internal revenue laws." Id. "[T]here need not be a showing that a party has violated a particular Internal Revenue Code section in order for an injunction to issue [under § 7402(a)]. The language of § 7402(a) encompasses a broad range of powers necessary to compel compliance with the tax laws." Edwards, 2008 WL 1925243, at *3-5 (quoting United States v. Ernst & Whinney, 735 F.2d 1296, 1300 (11th Cir. 1984)).

To obtain a permanent injunction, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[4] eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Additionally, of course, "[a]ctual success on the merits of a claim is required for a permanent injunction." Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 881 (9th Cir. 1999).

Taking each portion of the government's requested injunctive relief in turn, the first form of relief is certainly justified: defendant should be permanently enjoined from filing or attempting to file any document which purports to create a nonconsensual lien against the property of any federal officer or employee. As explained above (assuming these findings and recommendations are adopted), plaintiff has prevailed on the merits of its claim under § 7402(a). Plaintiff likewise has shown that it has and will continue to suffer irreparable injury absent an injunction. Defendant's sham UCC Financing Statements will continue to hang over the IRS Commissioner, causing substantial and immediate injury such as potential damage to his credit

---

[4] Because the Ninth Circuit has not squarely held that a plaintiff must only meet the statutory standard set forth in § 7402(a) to merit injunctive relief, as opposed to also establishing the traditional equitable factors for an injunction, the undersigned applies the equitable factors in an abundance of caution because in any event all factors are met here. C.f., Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1175 (9th Cir. 2010) ("[T]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief."); United States v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir. 2000) (finding, with regard to analogous statute 26 U.S.C. § 7408, that the "traditional requirements for equitable relief need not be satisfied since [the statute] expressly authorizes the issuance of an injunction").

1   ratings, clouding of title to property he owns, and distracting from his ability to perform his

2   official duties.  See Edwards, 2008 WL 1925243, at *4 (finding that defendant's filing of

3   frivolous UCC Financing Statements caused irreparable harm); United States v. Van Dyke, 568

4   F.Supp. 820, 822 (D. Or. 1983) (defendant's actions "in filing these lawsuits and documents,

5   impose irreparable harm upon the employees of the federal government with whom these tax

6   protestors quarrel").

7           Similarly, defendant's threatened filing of frivolous nonconsensual liens against Revenue

8   Officer Kreutzer irreparably harms plaintiff's tax collection efforts by harassing and distracting

9   an IRS officer in retaliation for carrying out his official duties.  Defendant's filing of a second

10  sham UCC Financing Statement against the Commissioner—and additional sham financing

11  statements against other federal officials—during the pendency of the government's motion

12  further confirms that an injunction is needed to prevent ongoing harassment of federal officials by

13  defendant.

14          Next, traditional remedies at law are inadequate in this case.  Monetary damages will not

15  stop defendant from continuing his pattern of harassing federal officials through the filing or

16  threatened filing of baseless purported liens on their property.  The balance of the equities also

17  strongly favors issuing this first portion of the requested injunction.  The harm to plaintiff is great;

18  whereas, defendant will suffer no prejudice or hardship from being prevented from filing

19  frivolous purported liens with no legal contractual basis because he was never entitled to record

20  or enforce such liens in the first place.

21          Finally, there is a strong public interest in enjoining defendant from harassing IRS

22  employees and other federal officials involved with enforcing internal revenue laws, given that

23  tax collection is for the benefit of the public at large and the public also has an interest in reducing

24  the extra expenditure of public funds on curtailing and remedying harassment like this.

25  Accordingly, the court should issue a permanent injunction prohibiting defendant and his agents

26  from filing or attempting to file any document which purports to create a nonconsensual lien

27  against the property of any federal officer or employee.

28  ////

13

1    However, the second form of requested injunctive relief is not justified on this record.

2    The government secondarily asks that defendant be permanently enjoined from "filing, or

3    attempting to file, any document or instrument which . . . contains any personal information (such

4    as the social security number or the residence address) of any federal officer or employee."  (ECF

5    No. 13.1 at 12; see Compl. at 5.)  This proposed injunction reaches beyond the scope of the facts

6    presented in the complaint and is too broad and vague for the undersigned to recommend its

7    issuance.

8        To the extent the request is based on defendant's inclusion of the Commissioner's home

9    address on the UCC Financing Statements, that conduct is already covered in the first portion of

10   the injunction, which the undersigned recommends issuing to enjoin the filing of sham liens

11   against federal officials.  To the extent the request is based on defendant's inclusion of Revenue

12   Officer Kreutzer's home address on the threatening letters sent in May and August 2021, there is

13   no indication that defendant "filed" those letters anywhere; he is merely alleged to have mailed

14   them to Officer Kreutzer's residence.  Further, the request to enjoin all filings containing "any

15   personal information (such as the social security number or the residence address)" of federal

16   officials is extremely broad.  The half-hearted attempt to confine the bounds of "personal

17   information" to social security numbers or residential addresses falls flat.  One can easily imagine

18   a scenario where defendant or his agents might legitimately seek to "file" a document that lists a

19   federal employee's home address—for instance, filing a complaint or proof of service in court,

20   perhaps.  And while it is more difficult to imagine a legitimate context for publicly displaying

21   another individual's social security number, the complaint includes no mention of any misconduct

22   involving dissemination of a social security number in this case.  Therefore, the undersigned does

23   not recommend issuing the second portion of the requested injunctive relief.  See United States v.

24   Uptergrove, No. 1:10-CV-01598-RMW, 2012 WL 639482, at *7 (E.D. Cal. Feb. 24, 2012)

25   (granting default judgment and issuing permanent injunction against filing baseless

26   nonconsensual liens, but declining to award broader injunctive relief that would have

27   impermissibly enjoined defendant's filing of "pleadings involving future events or conduct not

28   arising from the facts alleged in the complaint")

## RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 13) be GRANTED;

2. Judgement be entered in favor of the United States and against defendant Edward T. Kennedy;

3. The UCC Financing Statement, Filing Number U210080802220, filed on September 1, 2021 with the California Secretary of State, be declared null, void, and of no legal effect, and that California Secretary of State be directed to expunge and remove the record of this filing from the public record;

4. The United States be permitted to file any order or judgment obtained in the present case with the California Secretary of State and in the public records of any other jurisdiction where documents identical or similar to the above UCC Financing Statement may have been filed by defendant Edward T. Kennedy;

5. Defendant Edward T. Kennedy, his agents, employees, and all others in active concert or participation with him be permanently enjoined from filing, or attempting to file, any document or instrument, which purports to create a nonconsensual lien against the property of any federal officer or employee; and

6. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right

////

////

1    to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998);

2    Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

3

4                                          **ORDER**

5           In light of the above findings and recommendations, the government's request for a status

6    conference or hearing on the motion for default judgment (ECF No. 18) is DENIED as moot.

7    Dated:  September 12, 2022

8                                                          _____
                                                          CAROLYN K. DELANEY
9                                                          UNITED STATES MAGISTRATE JUDGE

10

11

12   19.kenn.1964

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                 16